LOTTINGER, Judge.
Following our overruling of defendants’ exceptions of no cause of action and remand to the Lower Court, (See 124 So.2d 367), the matter was heard on its merits. Judgment was rendered sustaining a plea of prescription adversely to the plaintiff and he has appealed. It is not necessary to discuss the plea of prescription because as we view the case, same can be disposed of on the merits.
It will be remembered from our first opinion herein that we concluded that plaintiff’s employer, Ourso & Company, was engaged in a non-hazardous business and, further, that plaintiff was injured while performing non-hazardous duties. We overruled the exception of no cause of action, however, “considering plaintiff’s allegations that he did frequently load and unload trucks belonging to his employer in connection with deliveries made by defendant through the use of motor vehicles”.
The record reflects that plaintiff’s primary duty was to place stock on the store shelves and this is what he was doing when the accident occurred. He stated that perhaps once or twice a week he would help to load trucks by pushing filled orders from the loading dock into the truck. He testified that in the two years he worked for Ourso & Company, he rode to the bank with another employee some four or five times. He did not ride on a truck to deliver groceries or to perform any other duty for his employer.
Mr. Milton M. Ourso, store manager, testified as follows:
“Q. Well, did you have supervision of Mr. Robert Allen?
“A. I did.
*590 To what work was he assigned? a
Primarily as a stockman in the sense that he was not a stock-man to keep stock in my warehouse, but to service — I could use the work stock clerk. His prime purpose was to keep my shelving in the retail portion of the store pertaining to groceries well stocked with merchandise that was in the warehouse.” <
* * * * * *
Do you recall ever seeing Mr. Allen go on to a truck in loading groceries or loading anything else for Ourso & Company? a
Never. <
Did Mr. Allen’s duties ever require him to drive a truck or travel by truck ? a
Never. >
Did Mr. Allen’s job or work or duties ever consist of using any machinery ? ¡o
Machinery of no type.” ¡o
* * * * * *
He just pitched in and did what was necessary? ©
That’s right, but his usefulness for loading the truck would have ceased at the time that they were putting the — at the loading platform, ready for the driver to load them as he saw fit. He knew where he was going. He goes by a schedule, in every case. The only time that would vary would be if he was left with two stops and it didn’t matter which one would be first or second, and that would have to be late in the evening towards closing time, or perhaps a goof or two that was caused during the day, but normally and always, he would have no reason to load the truck. As far as physically putting- a carton into the truck or getting into the truck, he had no business in it. He would have been defeating the purpose of it.”
The testimony of Mr. Ourso is fully corroborated by the driver of the grocery truck, Jessie Williams. This man had worked for Ourso & Company for about sixteen years at the time of the trial. He testified that he loaded his own truck in accordance with the stops which he would have to make and that he was the only one to know how to load the truck to correspond with these stops. He also stated that the plaintiff did not help him load the truck; that other employees would put the groceries on the platform but that no one helped him to load. He declared that the plaintiff never went with him in the truck and that he did not know the stops.
From the record as a whole, we believe that the most that the plaintiff did was to infrequently bring orders to the loading platform and that he did not even infrequently load the trucks as he alleged. The case appears to us to be strikingly similar to that of Boggs v. Great Atlantic and Pacific Tea Company, La.App., 125 So.2d 419, decided by the Third Circuit Court of Appeal since the instant matter was first before us wherein the Court held:
“The' facts of the instant case show that Mr. Boggs was employed as a price marker, but occasionally, in emergencies, he acted as a checker and in so doing used the cash register and the coffee grinder. He did this at the most once or twice a week and sometimes not for a month at a time. Under the jurisprudence set forth above, this clearly was not a sufficiently substantial portion of his duties to bring him within the coverage of the Workmen’s Compensation Act.”
Also pertinent here was the holding of the Third Circuit Court of Appeal in the case of Mercer v. Sears, Roebuck & Com *591 pany, La.App., 155 So.2d 112, wherein the Court held that:
“In our opinion, an employee in a business which is not classified as hazardous under the compensation act, and is not hazardous per se, whose duties are primarily nonhazardous in nature but who is required as an integral part of his employment to perform duties in a hazardous feature of the business, and who is injured while engaged in the nonhazardous portion of his employment, is not entitled to compensation unless the performance of such hazardous duties materially or substantially increases the risk or danger of work-connected accidents or injury. If the performance of hazardous work does materially increase that risk, then it may logically be said that the hazardous duties performed by him constitute a substantial part of his employment.”
The latest expression on the subject appears to be again by the Third Circuit Court of Appeal in the case of Kramer v. Etie, La.App., 155 So.2d 478, (July 15, 1963), wherein the Court held:
“Whether or not an employee’s duties are such as to bring him within the coverage of the Compensation Act, in the event he is injured while performing work of a non-hazardous nature, will necessarily depend on the facts of each individual case. However, it seems clear that the performance of the hazardous duties must be a substantial part of the employment, and not merely occasional to the performance of nonhazardous duties, before recovery will be allowed. See Boggs v. Great Atlantic & Pacific Tea Company, La.App., 125 So.2d 419; Mercer v. Sears, Roebuck & Company, La.App. 3 Cir., 155 So.2d 112.”
The record in the instant case convinces us that any hazardous duties such as may have been performed by the plaintiff herein were clearly not a substantial part of his employment and hence recovery must be denied.
For the reasons assigned, the judgment appealed from is affirmed and the plaintiff’s suit dismissed at his costs.
Judgment affirmed.
HERGET, J., recused.